## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RAMON RODRIGUEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | CV. NO. SA-12-CV-00905-DAE |
| BANK OF AMERICA, N.A., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### ORDER: (1) GRANTING DEFENDANT'S MOTION TO DISMISS;
### (2) DENYING PLAINTIFF'S MOTION FOR LEAVE OF COURT TO AMEND;
### (3) DISMISSING ACTION WITH PREJUDICE

On April 22, 2013, the Court heard a Motion to Dismiss brought by Defendant Bank of America, N.A. ("Defendant") and a Motion for Leave of Court to Amend Pleadings brought by Plaintiff Ramon Rodriguez ("Plaintiff"). Nathan T. Anderson, Esq., appeared at the hearing on behalf of Defendant; Kenneth E. Grubbs, Esq., and Hector Cortez, Esq., appeared on behalf Plaintiff. After reviewing the motions and the supporting and opposing memoranda, the Court **GRANTS** Defendant's Motion to Dismiss (doc. # 16) and **DENIES** Plaintiff's Motion for Leave of Court to Amend Pleadings (doc. # 17). This action is **DISMISSED WITH PREJUDICE**.

1

BACKGROUND

According to the First Amended Complaint and documents
incorporated by reference therein,[1] on or around September 5, 2007, Plaintiff
entered into a loan transaction for $128,000.00 with Security National Mortgage
Company which was secured by a mortgage encumbering real property located at
5118 Capistrano Street, San Antonio, Texas 78233 (the "Subject Property").
("FAC," Doc. # 11 ¶ 3.)  The Deed of Trust was recorded in the Official Public
Records of Bexar County on September 21, 2007.  (Doc. # 10, Ex. 1.)  Both the
Note and the Deed of Trust list Security National Mortgage Company as the
lender.  (See Doc. # 16, Ex. A & B.)  The Deed of Trust also lists Mortgage

---

[1] In its Motion to Dismiss, Defendant submitted copies of (1) the Note
(indorsed in blank), (2) the September 5, 2007 Deed of Trust, and (3) the February
16, 2012 assignment of the Deed of Trust.  (See doc. # 11.)  Plaintiff also included
these same documents in its Response to Defendant's Motion to Dismiss Plaintiff's
First Amended Complaint.  (See doc. # 18.)  The Supreme Court has held that in
deciding a motion to dismiss, a court may consider documents incorporated into
the complaint by reference.  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S.
308, 322 (2007).  By attaching documents to a motion to dismiss that are referred
to in a plaintiff's complaint and that are central to his or her claim, "the defendant
merely assists the plaintiff in establishing the basis of the suit, and the court in
making the elementary determination of whether a claim has been stated."  Collins
v. Morgan Stanley Dean Witter, 224 F.3d 496, 499 (5th Cir. 2000).  In this case,
the Note, the Deed of Trust, and the assignment are all central to Plaintiff's claims
and are properly considered by this Court.

Electronic Registration Systems, Inc. ("MERS") as beneficiary "acting solely as a nominee for Lender and Lender's successors and assigns." (Id. Ex. B.)

On February 16, 2012, MERS assigned to Defendant "all beneficial interest under that certain Deed of Trust . . . with the note(s) and obligations therein described . . . and all rights accrued or to accrue under said Deed of Trust." (Id. Ex C.)  Ms. Swarupa Slee, who is listed as "Vice President of MERS," signed the assignment on behalf of MERS.  (FAC ¶ 4.)  Plaintiff alleges that Ms. Slee is not Vice President of MERS, but rather an employee of "document mills," and that her signature may not be authentic.  (Id.)

At some point, Plaintiff ceased making payments on his mortgage and defaulted on his loan.  (See id. ¶ 5.)  As a result of Plaintiff's default, Defendant accelerated the full amount due under the Note and initiated a deed of trust foreclosure sale on the property.  (Doc. # 16 ¶ 8.)

On September 4, 2012, Plaintiff filed a petition in the 131st Judicial District Court of Bexar County, Texas, challenging the assignment of the Deed of Trust to Defendant and seeking injunctive relief preventing Defendant from foreclosing on the Subject Property.  (Doc. # 1, Ex. A.)  The district court granted Plaintiff an ex parte temporary restraining order preventing Defendant from foreclosing on the Subject Property until a further hearing could be held on

Plaintiff's request for a temporary injunction.  (See id.)  On September 14, 2012, the district court granted an extension of the temporary restraining order and set a hearing on Plaintiff's request for a temporary injunction for September 28, 2012. (Id.)

On September 26, 2012, Defendant timely removed the state-court action to this Court.  (Doc. # 1.)  On October 1, 2012, Defendant filed a Motion to Dismiss.  (Doc. # 4.)  On October 16, 2012, Plaintiff filed a Motion for Leave of Court to Amend.  (Doc. # 9.)  On October 22, 2012, Plaintiff filed a Response to Defendant's Motion to Dismiss.  (Doc. # 10.)  On October 23, 2012, the Court issued an Order granting Plaintiff's Motion for Leave to Amend and mooting Defendant's Motion to Dismiss.  (See id.)  Plaintiff filed the First Amended Complaint the same day.  (FAC.)

In the First Amended Complaint, Plaintiff brings an action to quiet title and claims under the Texas Uniform Commercial Code and Chapter 12 of the Texas Civil Practice and Remedies Code.  (Id.)  Plaintiff also brings an alternative claim for breach of contract "upon proof that Defendant is the 'holder [of the Note].'"  (Id. at ¶ 22.)

On November 6, 2012, Defendant filed a Motion to Dismiss Plaintiff's First Amended Complaint pursuant to Federal Rules of Civil Procedure

12(b)(1) and 12(b)(6).  (Doc. # 16.)  On November 19, 2012, Plaintiff filed a

second Motion for Leave of Court to Amend (doc. # 17) and a Response to the

Motion to Dismiss (doc. # 18).  On November 27, 2012, Defendant filed a

Response to Plaintiff's Motion for Leave of Court to Amend.  (Doc. # 21.)

STANDARD OF REVIEW

I.    Rule 12(b)(1)

            A motion to dismiss under Rule 12(b)(1) challenges a federal court's

subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  "Federal courts are courts of

limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to

adjudicate claims."  Stockman v. Fed. Election Comm'n, 138 F.3d 144, 151 (5th

Cir. 1998); see Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377

(1994).

            "When a Rule 12(b)(1) motion is filed in conjunction with other Rule

12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before

addressing any attack on the merits."  Ramming v. United States, 281 F.3d 158,

161 (5th Cir. 2001) (citing Hitt v. City of Pasadena, 561 F.2d 606, 608 (5th Cir.

1977)).  Considering Rule 12(b)(1) motions first "prevents a court without

jurisdiction from prematurely dismissing a case with prejudice."  Id.  When the

court dismisses for lack of subject matter jurisdiction, that dismissal "is not a

determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." Id.

The district court may dismiss for lack of subject matter jurisdiction based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Spotts v. United States, 613 F.3d 559, 565 (5th Cir. 2010).  A motion to dismiss based on the complaint alone presents a "facial attack" that requires the court to merely decide whether the allegations in the complaint, which are presumed to be true, sufficiently state a basis for subject matter jurisdiction. See Paterson v. Weinberger, 644 F.2d 521, 523 (5th Cir. 1981).  When evidence is presented with the motion to dismiss, the attack is "factual" and "no presumptive truthfulness attaches to [the] plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981).  A factual attack may occur at any stage of the proceedings. Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980).

While the burden of proof falls on the plaintiff to show that jurisdiction does exist, "[u]ltimately, a motion to dismiss for lack of subject matter

jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle [the] plaintiff to relief." Ramming, 281 F.3d at 161.

II.    Rule 12(b)(6)

Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Review is limited to the contents of the complaint and matters properly subject to judicial notice.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).  In analyzing a motion to dismiss for failure to state a claim, "[t]he court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004)).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

A complaint need not include detailed facts to survive a Rule 12(b)(6)

motion to dismiss.  See Twombly, 550 U.S. 544, 555–56 (2007).  In providing

grounds for relief, however, a plaintiff must do more than recite the formulaic

elements of a cause of action.  See id. at 556–57.  "The tenet that a court must

accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions," and courts "are not bound to accept as true a legal conclusion

couched as a factual allegation."  Iqbal, 556 U.S. at 678 (internal quotations and

citations omitted).  Thus, although all reasonable inferences will be resolved in

favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory

allegations."  Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1067 (5th Cir.

1994); see also Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005) ("We

do not accept as true conclusory allegations, unwarranted factual inferences, or

legal conclusions.").

    When a complaint fails to adequately state a claim, such deficiency

should be "exposed at the point of minimum expenditure of time and money by the

parties and the court."  Twombly, 550 U.S. at 558 (citation omitted).  However, the

plaintiff should generally be given at least one chance to amend the complaint

under Rule 15(a) before dismissing the action with prejudice.  Great Plains Trust

Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002).

<u>ANALYSIS</u>

Defendant brings its Motion to Dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction and pursuant to Rule 12(b)(6) for failure to state a claim.  For the reasons discussed below, the Court **GRANTS** Defendant's Motion to Dismiss Plaintiff's First Amended Complaint.  The Court also **DENIES** Plaintiff's Motion for Leave of Court to file his proposed Second Amended Complaint.

I.    <u>Standing</u>

By definition, standing goes to the "case or controversy" limitation on federal court jurisdiction.  <u>Barrett Computer Servs., Inc. v. PDA, Inc.</u>, 884 F.2d 214, 218 (5th Cir. 1989).  "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute."  <u>Warth v. Seldin</u>, 422 U.S. 490, 498 (1975).  Federal standing jurisprudence "contains two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement, and prudential standing, which embodies judicially self-imposed limits on the exercise of federal jurisdiction."  <u>Elk Grove Unified Sch. Dist. v. Newdow</u>, 542 U.S. 1, 11 (2004) (citations and internal quotations omitted); <u>Ass'n of Cmty. Orgs. v. Fowler</u>, 178 F.3d 350, 356 (5th Cir. 1999).

9

In this case, Defendant does not appear to challenge Plaintiff's Article III standing.[2]  However, the Fifth Circuit has noted that even if a defendant does not argue that the plaintiff lacks Article III standing, courts have an independent obligation to assure that jurisdiction exists by examining the constitutional dimension of standing before determining whether a plaintiff has prudential standing to assert a claim.  Harold H. Huggins Realty, Inc. v. FNC, Inc., 634 F.3d 787, 795 n.2 (5th Cir. 2011).  To establish Article III standing, a plaintiff must demonstrate (1) an injury in fact; (2) that is fairly traceable to the challenged act; and (3) that is likely to be redressed by the requested remedy.  Davis v. E. Baton Rouge Parish Sch. Bd., 78 F.3d 920, 926 (5th Cir. 1996).

The Court finds that Plaintiff satisfies the requirements of Article III standing insofar as he has an interest in the property that would be lost if the foreclosure continues, and that injury is fairly traceable to the conduct of Defendant in conducting the foreclosure sale and would be redressed by a

---

[2]  Although Defendant invokes Rule 12(b)(1) in its Motion to Dismiss, Defendant appears to challenge Plaintiff's prudential standing.  The Fifth Circuit has explained that issues regarding Article III standing are properly addressed under Rule 12(b)(1), whereas prudential or statutory standing issues are addressed under Rule 12(b)(6).  Harold H. Huggins Realty, Inc. v. FNC, Inc., 634 F.3d 787, 795 n.2 (5th Cir. 2011).

favorable decision on Plaintiff's claims.  See Pizzini v. Bank of Am., Civ. A. No.

SA-12-CV-308, 2012 WL 1834052, *4 (W.D. Tex. May 18, 2012).

Even if a plaintiff establishes the "minimum constitutional mandate" of Article III standing, prudential limitations also exist on a federal court's exercise of jurisdiction.  See Warth, 422 U.S. at 499.  These judicially created limits concern "(1) whether a plaintiff's grievance arguably falls within the zone of interests protected by the statutory provision invoked in the suit, (2) whether the complaint raises abstract questions or a generalized grievance more properly addressed by the legislative branch, and (3) whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties."  St. Paul Fire & Marine Ins. Co. v. Labuzan, 579 F.3d 533, 539 (5th Cir. 2009) (internal quotations and citations omitted).  Often, prudential standing "turns on the nature and source of the claim asserted" and goes to whether the law "on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief."  See Warth, 422 U.S. at 500–01.

Defendant argues that Plaintiff lacks standing to challenge the assignment of the Deed of Trust because Plaintiff was not a party to that assignment.  As stated above, one prudential standing limitation is that plaintiffs must assert their own legal rights and interests and cannot sue to enforce the rights

of third parties.  See St. Paul Fire, 579 F.3d at 539.  The Court acknowledges that numerous courts within this circuit have held that a plaintiff-mortgagor does not have standing to assert claims on the basis of an allegedly invalid assignment to which he or she was not a party.  See, e.g., Metcalf v. Deutsche Bank Nat'l Trust Co., No. 3:11-CV-3014-D, 2012 WL 2399369, at *5 (N.D. Tex. June 26, 2012) ("Courts in this circuit have repeatedly held that borrowers do not have standing to challenge the assignments of their mortgages because they are not parties to those assignments.");  DeFranceschi v. Wells Fargo Bank, N.A., 837 F. Supp. 2d 616, 623 (N.D. Tex. 2011).  Other courts, however, have held that a plaintiff may have standing, depending on the nature of the challenges asserted.  See, e.g.,  Routh v. Bank of Am., N.A., No. SA-12-CV-244, 2013 WL 427393, at *9 (W.D. Tex. Feb. 4, 2013).  This Court falls into the latter category.  See Saucedo v. Deutsche Bank Nat'l Trust Co., SA-12-CV-868, 2013 WL 656240, at *4 (W.D. Tex. Feb. 20, 2013).

"Texas has long followed the common law rule which permits a debtor to assert against an assignee any ground that renders the assignment void or invalid."  Routh, 2013 WL 427393, at *8 (quoting Miller v. Homecomings Fin., LLC, 881 F. Supp. 2d 825, 831 (S.D. Tex. 2012)).  The rule has been stated as follows by the Texas Court of Appeals:

> The law is settled that the obligors of a claim may defend the suit brought thereon on any ground which renders the assignment void, but may not defend on any ground which renders the assignment voidable only, because the only interest or right which an obligor of a claim has in the instrument of assignment is to insure himself that he will not have to pay the same claim twice.

Tri-Cities Constr., Inc. v. Am. Nat'l Ins. Co., 523 S.W.2d 426, 430 (Tex. Civ. App. 1975) (citing Glass v. Carpenter, 330 S.W.2d 530, 537 (Tex. Civ. App. 1959)). This rule accords with long-established principles of contract law.  A void contract is "invalid or unlawful from its inception" and therefore cannot be enforced.  17A C.J.S. Contracts § 169.  A voidable contract, on the other hand, "is one where one or more of the parties have the power, by the manifestation of an election to do so, to avoid the legal relations created by the contract."  Id.  Accordingly, only the parties to a voidable contract may seek to avoid its enforcement.

Under Texas law, deeds obtained by fraud or mutual mistake are voidable rather than void.  Poag v. Flories, 317 S.W.3d 820, 826 (Tex. App. 2010); see Nobles v. Marcus, 533 S.W.2d 923, 925 (Tex. 1976) (finding that a deed procured by fraud is voidable—not void—by the grantor); Williams v. Glash, 789 S.W.2d 261, 264 (Tex. 1990) (finding that when parties to an agreement have contracted under a mutual misconception of material fact, the agreement is voidable under the doctrine of mutual mistake).  A suit to set aside a deed obtained

by fraud can only be maintained by the defrauded party.  <u>Nobles</u>, 533 S.W.2d at

927 (citing <u>Smith v. Carter</u>, 45 S.W.2d 398, 400 (Tex. Civ. App. 1932)).

By contrast, a deed that is forged is void.  <u>Lighthouse Church of

Cloverleaf v. Tex. Bank</u>, 889 S.W.2d 595, 603 (Tex. App. 1994).  The Texas

Supreme Court has held that, "when a person signs his true name, purporting to act

as the agent of another, he generally has not committed a forgery."  <u>Nobles</u>, 533

S.W.2d at 926.  It further explained:

> An agent may commit forgery by signing an instrument in disobedience of
> his instructions or in improper exercise of authority, but one who executes
> an instrument purporting on its face to be executed by him as an agent, when
> in fact he has no authority to execute such instrument, is not guilty of
> forgery.

<u>Id.</u> at 927 (citation omitted).

In the First Amended Complaint, Plaintiff alleges that the assignment

of the Deed of Trust was "fraudulent."  (FAC ¶ 4.)  He contends that Ms. Swarupa

Slee—who signed the assignment on behalf of MERS—is not a "Vice President"

of MERS, but rather "an employee of one of the various 'document mills' located

around the county who are hired for the sole purpose of creating documents that

fraudulently give the appearance of chain of title."  (<u>Id.</u>)  Additionally, Plaintiff

alleges that an investigation into Ms. Slee revealed that she "had at least five or

more signatures" and that Ms. Slee's signature "may not be authentic."  (<u>Id.</u>)

14

Plaintiff's allegations would render the assignment voidable rather than void.  Even if Ms. Slee worked as part of a "document mill" and had different signature variations, as long as MERS was aware of this and did not object to it, the assignment—though perhaps fraudulent—would not rise to the level of a forgery and thus would be voidable, not void.  If, however, Plaintiff somehow conspired with Ms. Slee to carry out the assignment with the purpose of defrauding MERS out of its legitimate interest in the Deed of Trust, the assignment would be a forgery and therefore void.  The Court concludes that Plaintiff's allegations that Ms. Slee merely lacked authority to sign on behalf of MERS would render the assignment merely voidable.  Thus, Plaintiff lacks standing to challenge the assignment of the Deed of Trust on this ground.  To the extent that Plaintiff's claims for quiet title and declaratory judgment are based on a challenge to the assignment of the Deed of Trust, they are dismissed.

II.    Sufficiency of the First Amended Complaint

For the reasons stated below, Plaintiff's remaining causes of action fail to state a claim, and the Court dismisses them pursuant to Rule 12(b)(6).

A.    Bifurcation Theory

Underlying all of Plaintiff's claims is the idea that Defendant must be holder of the Note—not merely the beneficiary of the Deed of Trust—in order to

15

foreclose on the Subject Property.  For instance, Plaintiff states in the First

Amended Complaint that Defendant cannot "foreclose under a deed of trust when

[] Defendant [is] not the holder of the note."  (FAC ¶ 18.)  Thus, before discussing

the merits of Plaintiff's various causes of action, the Court addresses this flawed

legal theory, which has been roundly rejected by both federal and state courts in

Texas.  See Swim v. Bank of Am., N.A., No. 3:11-CV-1240, 2012 WL 170758, at

*3 n.25 (N.D. Tex. Jan. 20, 2012) (collecting cases).

      As a preliminary matter, Texas law differentiates between

enforcement of a promissory note and a deed of trust.  "Where there is a debt

secured by a note, which is, in turn, secured by a lien, the lien and the note

constitute separate obligations."  Aguero v. Ramirez, 70 S.W.3d 372, 374 (Tex.

App. 2002).  Thus, the right to recover on the promissory note and the right to

foreclose may be enforced separately.  See Stephens v. LPP Mortg., 316 S.W.3d

742, 747 (Tex. App. 2010) (finding that the promissory note and the lien which

secures it are "separate legal obligations" that "may be litigated in separate

lawsuits"); Carter v. Gray, 125 Tex. 219, 81 S.W.2d 647, 648 (Tex. 1935) ("It is so

well settled as not to be controverted that the right to recover a personal judgment

for a debt secured by a lien on land and the right to have a foreclosure of lien are

severable, and a plaintiff may elect to seek a personal judgment without

16

foreclosing the lien, and even without a waiver of the lien."). Foreclosure is an independent action against the collateral and may be conducted without judicial supervision. Bierwirth v. BAC Home Loans Servicing, L.P., No. 03-11-00644-CV, 2012 WL 3793190, at *4 (Tex. App. Aug. 30, 2012) (citing Reardean v. CitiMortgage, Inc., No. A-11-CA-420, 2011 WL 3268307, at *3 (W.D. Tex. July 25, 2011)). Enforcement of the promissory note, on the other hand, is a personal action against the signatory and requires a judicial proceeding. Id.

      Chapter 51 of the Texas Property Code, which governs non-judicial foreclosures, authorizes either a mortgagee or a mortgage servicer acting on behalf of a mortgagee to sell real property under a "power of sale conferred by a deed of trust." See Tex. Prop. Code. §§ 51.002, 51.0025. The Property Code defines a "mortgagee" as "(A) the grantee, beneficiary, owner, or holder of a security instrument; (B) a book entry system;[3] or (C) if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record." Tex. Prop. Code § 51.0001(4). Under Texas law, therefore, Defendant

_____

   [3] A "book entry system" is defined as "a national book entry system for registering a beneficial interest in a security instrument that acts as a nominee for the grantee, beneficiary, owner, or holder of the security instrument and its successors and assigns." Tex. Prop. Code § 51.0001(1).

need not hold the Note in order to foreclose; it need only have the right to foreclose under the Deed of Trust.

In this case, Defendant claims authority to foreclose under the Deed of Trust pursuant to the assignment of the Deed of Trust executed by MERS.  As discussed above, Plaintiff lacks standing to challenge the assignment of the Deed of Trust to Defendant.  Moreover, Plaintiff's arguments regarding the Deed of Trust are of no avail because Defendant appears to be the holder of the Note in this case.

Under Texas law, a holder is "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession."  Tex. Bus. & Com. Code § 1.201(b)(21)(A).  "A person can become the holder of an instrument when the instrument is issued to that person, or he can become a holder by negotiation."  Martin v. New Century Mortg. Co., 377 S.W.3d 79, 84 (Tex. App. 2012) (citing Tex. Bus. & Com. Code § 3.201 cmt. 1).  When the instrument is payable to an identified entity, "negotiation requires transfer of possession of the instrument and its indorsement by the holder."  Id. (quoting Tex. Bus. & Com.Code § 3.201(b)).  Physical possession of a promissory note that bears a blank indorsement establishes ownership and the right to collect.  See Tex. Bus. & Com. Code § 3.205(b) ("When indorsed in blank, an instrument

18

becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed."); Kiggundu v. Mortg. Elec. Registration Sys. Inc., 469 F. App'x 330, 331–32 (5th Cir. 2012).

At the hearing, Defendant produced a copy of the original Note, which is indorsed in blank.[4] (See Doc. # 16, Ex. A.)  Defendant's possession of the Note and the indorsement suggest that Defendant became the holder of the note by negotiation.  In the First Amended Complaint, Plaintiff does not specifically allege that the indorsement on the Note is invalid for any reason.  Thus, the Court must presume that the indorsement is authentic.  Martinez v. Wells Fargo Bank, N.A., No. SA-12-CV-789, 2013 WL 1562759, at *4 (W.D. Tex. Apr. 12, 2013); see Tex. Bus. & Com. Code § 3.308(a) ( "[T]he authenticity of, and authority to make, each signature on the instrument are admitted unless specifically denied in the pleadings.")  Plaintiff's allegation that Defendant cannot foreclose under the Deed of Trust because it is not the holder of the Note fails because Plaintiff has not raised any challenge to the authenticity of the indorsement or Defendant's possession of the Note.

---

[4] The Note was originally indorsed to Countrywide Home Loans, Inc., which then indorsed the Note in blank.  (See Doc. # 16, Ex. A.)

Moreover, "under Texas law, the mortgage follows the note."

Kiggundu, 469 F. App'x at 332 (citing Lawson v. Gibbs, 591 S.W.2d 292, 294

(Tex. App. 1979)); United States v. Vahlco Corp., 720 F.2d 885, 891 (5th Cir.

1983)); see also Tex. Bus. & Com. Code § 9.203(g); id. cmt. 9 ("Subsection (g)

codifies the common-law rule that a transfer of an obligation secured by a security

interest or other lien on personal or real property also transfers the security interest

or lien."). As the Fifth Circuit recently explained in similar circumstances:

> Though [Plaintiff] attacks the validity of the assignment of the mortgage document—the deed of trust—to the Bank of New York, this argument is beside the point. It was sufficient for the Bank of New York to establish that it was in possession of the note; it was not required to show that the deed of trust had been assigned to it.

Kiggundu, 469 F. App'x at 332–33; see also Gilbreath v. White, 903 S.W.2d 851,

854 (Tex. App. 1995) ("An assignment of the deed of trust is not in evidence, but

the collateral follows the promissory note obligation.").

Thus, if Defendant is holder of the Note, the Deed of Trust has not

been "separated" from the Note because it follows the Note. Even if the

assignment of the Deed of Trust was void (rather than voidable), the documents

central to Plaintiff's case suggest, and no factual allegations controvert, that

Defendant would have authority to foreclose pursuant to the terms of the Deed of

Trust because Defendant is the holder of the Note.  See Martinez, 2013 WL 1562759, at *5.

     B.    Quiet Title

        A suit to quiet title is an equitable action in which the plaintiff seeks to remove from his title a cloud created by an allegedly invalid claim.  Florey v. Estate of McConnell, 212 S.W.3d 439, 448 (Tex. App. 2006).  A "cloud" on legal title includes any deed, contract, judgment lien or other instrument, not void on its face, that purports to convey an interest in or makes any charge upon the land of the true owner, the invalidity of which would require proof.  Wright v. Matthews, 26 S.W.3d 575, 578 (Tex. App. 2000).  "In a suit to remove a cloud from his title, the plaintiff has the burden of supplying the proof necessary to establish his superior equity and right to relief."  Hahn v. Love, 321 S.W.3d 517, 531 (Tex. App. 2009).  "The effect of a suit to quiet title is to declare invalid or ineffective the defendant's claim to title."  Gordon v. W. Houston Trees, Ltd., 352 S.W.3d 32, 42 (Tex. App. 2011).

        To state a quiet title claim, a plaintiff must show: (1) an interest in a specific property; (2) title to the property is affected by a claim by the defendant; and (3) the claim, although facially valid, is invalid or unenforceable.  U.S. Nat'l Bank Ass'n v. Johnson, No. 01-10-00837-CV, 2011 WL 6938507, at *3 (Tex.

App. Dec. 30, 2011) (citing <u>Sadler v. Duvall</u>, 815 S.W.2d 285, 293 n. 2 (Tex. App. 1991)).

   In the instant case, Plaintiff successfully alleges the first element of an action to quiet title.  Plaintiff maintains he is the owner of the Subject Property, which is encumbered by a mortgage.  (<u>See</u> FAC ¶ 3.)  This appears to be sufficient to establish an interest in property for purposes of an action to quiet title.  <u>See</u> <u>Mortg. Elec. Registration Sys., Inc. v. Groves</u>, No. 14-10-00090-CV, 2011 WL 1364070, at *4 (Tex. App. Apr. 12, 2011) (holding that plaintiff's allegation that "she owns the property by virtue of her recorded deed" was a sufficient interest in property for the purposes of a quiet title action).  It is an "error" to require a party to demonstrate "fee simple or [an] uncontestable interest to prevail in a suit to remove cloud on title or to quiet title."  <u>Katz v. Rodriguez</u>, 563 S.W.2d 627, 630 (Tex. Civ. App. 1977).  While the Court is troubled by the fact that Plaintiff has not alleged that he has satisfied his obligations under the mortgage, this does not appear to be a requirement under Texas law to stating a claim for quiet title.

   The second element of a claim for quiet title, "whether title to the property is affected by a claim by the defendant," is adequately alleged in this case.  <u>See</u> <u>Johnson</u>, 2011 WL 6938507, at *3.  Because Defendant claims the right to foreclose on the Subject Property pursuant to the assignment of the Deed of Trust,

this is a "cloud" on Plaintiff's interest in the property.  See Routh, 2013 WL

427393, at *4.

        However, Plaintiff fails to plead sufficient facts to support the third

element of quiet title—namely, that "the claim, although facially valid, is invalid or

unenforceable."  See Johnson, 2011 WL 6938507, at *3.  Plaintiff's claim rests on

the allegation that, although Defendant appears to have a right to foreclose on the

Subject Property based on the assignment of the Deed of Trust, Defendant is in

reality not authorized to foreclose for reasons not apparent on the face of the

assignment.  However, as discussed above, Plaintiff lacks standing to challenge the

assignment of the Deed of Trust on the ground that MERS' agent lacked authority

to sign on its behalf, and Plaintiff has not made any allegations that challenge

Defendant's status as holder of the Note.  Thus, Plaintiff fails to state a claim for

quiet title.

        C.    Violations of Texas Uniform Commercial Code

        Plaintiff brings a cause of action for "UCC violations," or violations

of the Texas Uniform Commercial Code, codified by the Texas Legislature in the

Texas Business and Commerce Code.  More specifically, Plaintiff alleges that

Defendant is not the holder of the Note and "cannot prove all of the . . . elements of

holder status," citing to § 3.301, § 3.309, and § 3.418(d) of the Texas Business and

Commerce Code.  (FAC ¶ 14.)  Plaintiff also alleges that, "[p]ursuant to § 3.203 of the Texas Business and Commerce Code, Defendant Bank has no right to enforce the instrument due to the fraud and illegal acts of transferring the note and deed of trust."  (Id. ¶ 16.)

Section 3.301 of the Texas Business and Commerce Code defines a "[p]erson entitled to enforce" an instrument as one who is "(i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3.309 or 3.418(d)."  Tex. Bus. & Com. Code § 3.301.  Section 3.301 does not appear to provide an independent cause of action to Plaintiff.  However, even if § 3.301 does provide a cause of action, Plaintiff has not stated a claim on this ground because, as explained above, Plaintiff has not pleaded facts to indicate the transfer of the Note to Defendant was invalid.

Additionally, although Plaintiff cites § 3.309 and § 3.418(d) of the Texas Business and Commerce Code, these provisions do not apply.  Section 3.309 applies to the enforcement of a "lost" instrument.  See Tex. Bus. & Com. Code § 3.309.  Plaintiff has not pleaded facts to indicate that the Note is or was "lost"; it was produced at the hearing.  Section 3.418(d) applies to an instrument that is

"paid or accepted by mistake," and Plaintiff has not pleaded any facts to indicate Defendant acquired the Note in this fashion.  Plaintiff therefore fails to state a claim under § 3.309 and § 3.418(d).

Plaintiff also invokes § 3.203 of the Texas Business and Commerce Code, which states that a "transferee cannot acquire rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument."  Tex. Bus. & Com. Code  § 3.203.  However, Plaintiff has not alleged that Defendant engaged in fraud or illegality concerning the transfer of the Note.  As described above, the documents central to Plaintiff's case suggest that Defendant became the holder of the Note by negotiation, and Plaintiff has not brought any allegations that would invalidate the transfer of the Note.  Accordingly, Plaintiff fails to state a claim under § 3.203.

D.    Texas Civil Practice & Remedies Code § 12.002

Plaintiff alleges that Defendant violated Chapter 12 of the Texas Civil Practice and Remedies Code by filing with the Office of the Bexar County Clerk a fraudulent assignment of the Deed of Trust.  (FAC ¶ 20.)  Section 12.002(a) provides:

A person may not make, present, or use a document or other record with:

(1) knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property;

(2) intent that the document or other record be given the same legal effect as a court record or document of a court created by or established under the constitution or laws of this state or the United States or another entity listed in Section 37.01, Penal Code, evidencing a valid lien or claim against real or personal property or an interest in real or personal property; and

(3) intent to cause another person to suffer:

> (A) physical injury;

> (B) financial injury; or

> (C) mental anguish or emotional distress.

Tex. Civ. Prac. & Rem. Code § 12.002(a).

Defendant argues that the assignment of the Deed of Trust is not a "lien or claim" within the meaning of § 12.002(a)(1), citing Marsh v. JPMorgan Chase Bank, N.A., 888 F. Supp. 2d 805 (W.D. Tex. 2012).  In Marsh, the court analyzed whether the assignment of a deed of trust qualifies as a "lien or claim" under § 12.002.  It noted that Texas courts had not yet considered this question and proceeded to examine the legislative history of Chapter 12, ultimately concluding that the statute only applies to fraudulent documents "purporting to create a lien or claim against real or personal property."  Id. at 813 (quoting House Comm. on Criminal Jurisprudence, Bill Analysis, Tex. H.B. 1184, 75th Leg., R.S. (1997)

(emphasis added)).  The court held that an assignment of a deed of trust falls

outside the scope of Chapter 12 because it does not <u>create</u> a lien or claim, but

"merely purports to transfer an existing deed of trust from one entity to another."

<u>Id.</u>

  However, this Court has held that an assignment of a deed of trust

<u>does</u> constitute a claim against real property, relying upon <u>Bernard v. Bank of Am.,</u>

<u>N.A.,</u> No. 04–12–00088–CV, 2013 WL 441749 (Tex. App. Feb. 6, 2013), a

recently-decided Texas Court of Appeals opinion.  <u>Howard v. JPMorgan Chase,</u>

<u>N.A.,</u> SA-12-CV-00440, 2013 WL 1694659, at *12 (W.D. Tex. Apr. 18, 2013).  In

<u>Bernard v. Bank of America, N.A.,</u> the court affirmed the entry of summary

judgment under § 12.002(a) against homeowners who unilaterally drafted, signed,

and filed a "'Substitution of Trustee" document in an attempt to prevent a bank

from lawfully foreclosing on a lien against their property.  <u>Bernard,</u> 2013 WL

441749, at *4.  In its analysis, the court assumes that the "Substitution of Trustee"

document is a "claim" against real property within the meaning of Chapter 12.  <u>See</u>

<u>id.</u>  A "Substitution of Trustee" document, like an assignment of a deed of trust,

transfers an existing claim in property from one entity to another and does not

"create" a new claim against property in the sense <u>Marsh</u> would require.  Thus, this

Court concluded in <u>Howard</u> that the <u>Marsh</u> court's reading of § 12.002(a) is overly

narrow and found that an assignment of a deed of trust does qualify as a "claim" against real property (or against an interest in real property) under that section. Howard, 2013 WL 1694659, at *12.

Nonetheless, Plaintiff has failed to allege sufficient facts to state a cause of action under § 12.002(a).  Plaintiff merely parrots the language of § 12.002(a)(3) by stating that he suffered "financial injury" and "mental anguish or emotional distress" by the filing of the assignment.  (See FAC ¶ 20.)  Thus, his statements are legal conclusions, not allegations of fact, and are therefore insufficient to state a plausible claim for relief under the Civil Practice and Remedies Code.  See Twombly, 550 U.S. at 556–57 (finding that a plaintiff must do more than recite the formulaic elements of a cause of action).  Moreover, as discussed above, the assignment of the Deed of Trust is merely voidable by the two parties to the assignment—MERS and Defendant.  Plaintiff has not been put in danger of having to pay his mortgage twice or of being foreclosed upon twice by two different entities.  Thus, it would be difficult for him to demonstrate any injury, financial or otherwise, stemming from the assignment.

E.    Breach of Contract

Plaintiff also brings a cause of action for breach of contract, alleging that the mortgage was sold by the original lender into a credit default swap and was

28

paid by insurance companies.  (FAC ¶ 22.)  Plaintiff contends that, when this occurred, he was no longer required to pay under the terms of the Note and Deed of Trust because he is entitled to "proper credit" for payments made by the insurance companies.  (<u>Id.</u>)

Under Texas law, "[t]he elements in a claim for breach of contract are: (1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach."  <u>Richter v. Wagner Oil Co.</u>, 90 S.W.3d 890, 898 (Tex. App. 2002).  "A breach of contract occurs when a party fails to perform an act that it has expressly or impliedly promised to perform."  <u>Case Corp. v. Hi–Class Bus. Sys. of Am., Inc.</u>, 184 S.W.3d 760, 769–70 (Tex. App. 2005).

Plaintiff's claim for breach of contract fails because he has not alleged that he fulfilled his obligations under the contract.  <u>See</u> <u>Martinez</u>, 2013 WL 1562759, at *9.  Instead, he merely alleges that "Defendant has been paid in part" by multiple insurance policies.  (FAC ¶ 22.)  Plaintiff does not allege that these payments would have been sufficient to constitute performance of the contract.  "It is a well established rule that a party to a contract who is himself in default cannot maintain a suit for its breach."  <u>Dobbins v. Redden</u>, 785 S.W.2d 377, 378 (Tex.

1990) (internal quotation marks omitted).  Thus, Plaintiff fails to state a claim for breach of contract.

       F.    <u>Declaratory Judgment</u>

            Plaintiff seeks a declaratory judgment pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code finding, among other things, that Defendant is not "the valid proper assignee of the Note and Deed of Trust."  (FAC ¶ 13.)  The Fifth Circuit has held that the Texas Declaratory Judgment Act is a procedural rule that does not apply in federal court.  See <u>Utica Lloyd's of Tex. v. Mitchell</u>, 138 F.3d 208, 210 (5th Cir. 1998).  Plaintiff therefore fails to state a claim for relief on this ground.

            However, even if Plaintiff had brought his claims under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, his claims would fare no better.  To be entitled to declaratory relief under the Federal Declaratory Judgment Act, a plaintiff must allege facts demonstrating that there exists "a substantial and continuing controversy between the two adverse parties."  <u>Bauer v. Texas</u>, 341 F.3d 352, 358 (5th Cir. 2003).  The Act does not create substantive rights; it is merely a procedural device that enhances the remedies available to plaintiffs in federal court.  <u>Skelly Oil Co. v. Phillips Petroleum Co.</u>, 339 U.S. 667, 671-72 (1950); <u>Appling Cnty. v. Mun. Elec. Auth. of Georgia</u>, 621 F.2d 1301, 1303 (5th

Cir. 1980).

As described in detail above, Plaintiff has not pleaded facts to indicate that there is a "substantial and continuing controversy" as to whether Defendant holds the Note.  Because plaintiff fails to bring any viable causes of action, the Court finds plaintiff's request for declaratory relief should be dismissed. See Marsh, 888 F. Supp. 2d at 815 (citation omitted).

G.   Injunctive Relief

Plaintiff's request for a preliminary injunction also fails.  Plaintiff may not seek a preliminary injunction in a complaint.  Pursuant to Local Rule CV–65, "[a]n application for a temporary restraining order or preliminary injunction shall be made in an instrument separate from the complaint."  Moreover, to obtain a preliminary injunction, a plaintiff must demonstrate, among other things, a likelihood of success on the merits of his or her claim.  See Harris Cnty. v. CarMax Auto Superstores, Inc., 177 F.3d 306, 312 (5th Cir. 1999).  Because Plaintiff has not pleaded a single viable cause of action, he cannot make this showing and his request for injunctive relief fails.  See Pajooh v. Harmon, 82 F. App'x 898, 899 (5th Cir. 2003) (affirming the district court's denial of injunctive relief when plaintiff failed to state a claim).

31

III.    Motion to Amend

Plaintiff seeks leave to file a proposed Second Amended Complaint. (Doc. # 17.)  The deadline set in the Scheduling Order for Plaintiff to seek leave to amend was January 4, 2013.  (See doc. # 15.)  Plaintiff timely sought leave to amend because he filed his motion on October 19, 2012.  In his motion, Plaintiff states that he seeks to cure "erroneous references made in the first amended complaint" and leave to amend "because Defendant has filed a Rule 12(b)(6) motion challenging the sufficiency of [] Plaintiff's Pleadings."  (Doc. # 17 ¶¶ 3–4.)

"Under Rule 15(a), 'leave to amend shall be freely given when justice so requires,' and should be granted absent some justification for refusal." Willard v. Humana Health Plan of Tex. Inc., 336 F.3d 375, 386 (5th Cir. 2003) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).  A court may deny a motion for leave to amend for reasons such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Foman, 371 U.S. at 182 (emphasis added).

The proposed Second Amended Complaint is virtually identical to the First Amended Complaint; the only changes appear to be the correction of a few

32

typographical errors.  Plaintiff conceded this was the case at the hearing.  Thus, because the proposed Second Amended Complaint does not raise any new factual allegations that would cure the deficiencies of the First Amended Complaint, it also fails to state a claim upon which relief can be granted.  To allow amendment would be futile.  Moreover, the fact that Plaintiff did not make any material changes to the amended complaint leaves the Court with the inescapable impression that Defendant filed his Motion for Leave of Court to Amend for the sole purpose of delay.  The Court also notes that Defendant has already been allowed to amend his pleadings once, following Defendant's first Motion to Dismiss.  (See docs. ## 4, 9, 11.)  To allow further amendment would cause undue delay and prejudice Defendant, who has already brought two separate motions to dismiss.

<u>CONCLUSION</u>

For the reasons stated above, the Court **GRANTS** Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (doc. # 16) and **DENIES** Plaintiff's Motion for Leave of Court to Amend Pleadings (doc. # 17).  This action is **DISMISSED WITH PREJUDICE**.

IT IS SO ORDERED.

DATED: San Antonio, Texas, April 25, 2013.

_____
David Alan Ezra
Senior United States District Judge